IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| JIMMY GIDDENS | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:13cv232 |
| ROGELIO GARCIA | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Jimmy Giddens filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The sole remaining Defendant in the case is Sgt. Rogelio Garcia.

**I. Background**

Giddens states that on April 17, 2012, he was working in the chow hall at the Gib Lewis Unit. The warden and an official from Huntsville were inspecting the kitchen and asking Giddens questions. The kitchen captain became angry at some of the answers which Giddens was giving and had him removed from the kitchen. He was taken to lockup without being given a reason.

When he got to lockup, Sgt. Garcia called him an "a\*\*hole." Giddens responded by calling Garcia a "wetback." Garcia placed his hands around Giddens' neck and began to choke him. The officer then punched Giddens in the stomach several times and tried to punch him in the genitals. Sgt. Whigham, Sgt. Stewart, and Officer Miraz stood by and watched, making no attempt to intervene. An inmate named Carlos Gutierrez wrote a witness statement to the Office of the Inspector General, but this statement denied seeing anything.

Five days later, Officer Barlow came to take Giddens to the medical department for a pre-hearing physical. Giddens asked Barlow why he had not been taken to the medical department after the assault on April 17, and Barlow said that he had been told Giddens refused the pre-hearing

1

detention (PHD) physical. Giddens stated that if he had refused the PHD physical at the time he was placed in detention, why was he being taken for one five days later. Barlow replied "that doesn't make any sense."

Giddens states that as a result of the assault, his throat was swollen to the point that he could not swallow. However, by the time he got to the infirmary, five days later, the swelling had gone away. He states that Nurse Rogers told him that nothing was wrong with him and no treatment was needed.

The next day, April 23, Captain Collins took Giddens to see Major Bryant. The major asked what had happened and Giddens told him everything, including how Nurse Rogers had told him to file a sick call request after he told her that his throat hurt and it was hard for him to swallow. He also complained to Rogers of neck and back pain. Bryant asked if Giddens had written down what had happened and Giddens said yes. Bryant said "give me your written statement and I will make a copy and return it to you," but the major never did return Giddens' written statement.

On April 24, counsel substitute Angela Rice called Giddens to her office to help her fill out an appeal for a disciplinary case which Giddens had received for allegedly threatening Sgt. Garcia. Rice told him to file on Garcia for assaulting him and failure to report a use of force, stating that had Garcia not assaulted Giddens, a verbal threat would not have been made. Rice told Giddens that Sgt. Garcia said he forgot to write down that Giddens had refused the pre-hearing detention physical. She suggested that Giddens report the assault to his family and have them contact the ombudsman's office.

Sgt. Garcia was ordered to answer the lawsuit and the case was set for trial. Prior to trial, the case was continued because of unrelated issues concerning Giddens. After the continuance of the trial, Garcia filed a motion for summary judgment, to which Giddens has filed a response.

## II. The Motion for Summary Judgment

Sgt. Garcia's motion for summary judgment argues that the objective factors in Giddens' medical records controvert his allegations to such an extent as to make these allegations implausible

and thus subject to summary dismissal. Garcia states that according to the medical records, Giddens was seen on numerous occasions by medical personnel in the days following the incident and no injuries were ever noted. He argues that under Fifth Circuit precedent, if the objective factors of an inmate's medical record show no evidence of any injuries consistent with the inmate's allegations, the court may conclude that the allegations are implausible.

The affidavit of Nurse Peggy Durant, R.N., says that she was assigned to conduct cell checks on April 18, 2012. She stopped at Giddens' cell to observe him and inquire about his medical status. She saw no signs of injury and asked Giddens if he needed anything from the medical department. Giddens did not request medical care. She placed a check mark on his daily flow sheet, indicating that his medical status had not changed; had he appeared to be injured or requested medical care, she would have assisted him in obtaining medical care and would have placed an asterisk on his flow sheet rather than a check mark to show that medical care was needed. (ECF TXED 6:13-cv-232, 51-1, p.2).

An affidavit from Nurse Rhonda Rogers, LVN, states that she conducted a medical evaluation of Giddens on April 22, 2012. This evaluation was conducted after Giddens filed a grievance claiming that Garcia punched him several times in the abdominal region and choked him. She asked Giddens to remove his shirt so she could examine his abdominal region. Nurse Rogers saw no bruises, contusions, or abrasions. She then pressed gently into Giddens' stomach and found no signs of tenderness.

Rogers states that even though her examination took place five days after the incident, had he sustained bruising from being repeatedly punched in the stomach, these bruises would have been evident to some degree at the time the examination was done. She adds that "it is highly unlikely that he would show no signs of injury or tenderness in the days following his alleged assault." (ECF TXED 6:13-cv-232, 51-2, p.2).

In his response to the motion, Giddens acknowledges that his flow sheet has check marks for April 18, 19, 20, 21, 22, 23, and 24, ostensibly indicating that he did not request medical care on

3

those dates. However, Giddens says that despite the fact his flow sheet has a check mark on it for April 22, Rogers noted that same day that Giddens "complained of being hit in the stomach and choked by an officer on Tuesday." Furthermore, Giddens states that Durant placed a check mark on his flow sheet on April 23, the same date he filed his grievance; he states that therefore, the mere placement of a check mark does not mean that he had no health complaints on April 18 or any other day.

Giddens states that although TDCJ policy requires that an inmate receive a pre-hearing detention physical within 12 hours of his placement in pre-hearing detention, he did not receive a physical until April 22, five days after being put in pre-hearing detention. Rogers claimed that this examination occurred because Giddens filed a grievance, but his grievance was not submitted until April 23, the day after her examination of him.

In his affidavit, Giddens reiterates that Garcia choked him, hit him in the stomach, and tried to hit him in the genitals. The choking caused him to be unable to swallow for several days and the hitting caused pain in his stomach. He did not get a pre-hearing detention physical and was never offered one; Giddens specifically denied refusing a physical although Rice told him that Garcia said he "forgot to write down" that Giddens had refused it.

Five days after the incident, Giddens states he was taken to the infirmary for examination. He asked why he had not had a physical earlier and the escorting officer said he understood Giddens had refused, which was not true. During the exam, he told Rogers that Garcia beat him in the stomach and choked him and that as a result, it was hard to swallow, it hurt to turn his head, and his stomach and back hurt.

Although Nurse Durant states that she checked his cell on April 18 and he did not request any medical care, Giddens states that he does not remember Durant coming by his cell. He contends that he told everyone coming by his cell about what happened and that he wanted medical care.

## III. Legal Standards and Analysis

### A. Excessive Use of Force

In *Wilburn v. Shane*, 193 F.3d 317, 1999 U.S. App. LEXIS 38885 (5th Cir., August 20, 1999), the plaintiff S.J. Wilburn complained, *inter alia,* of excessive force. The district court dismissed the lawsuit on summary judgment, finding that no evidence supported the plaintiff's allegations. On appeal, the Fifth Circuit stated as follows:

> Furthermore, based on the objective factors of Wilburn's medical records, which show no evidence of any injuries consistent with the allegations of excessive force, Wilburn's allegations are implausible. *See Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990). It is implausible that the hospital would not have recorded the severe injuries Wilburn alleged he received. Therefore, the district court properly granted the motion for summary judgment as to all defendants.

In *Williams v. Thompson*, civil action no. 5:11cv68, 2012 U.S. Dist. LEXIS 25292 (E.D.Tex., January 26, 2012, *Report adopted at* 2012 U.S. Dist. LEXIS 25302 (E.D.Tex., February 28, 2012), the plaintiff alleged that he was hit in the head with a flashlight hard enough to render him unconscious, but two hours later, his head showed no signs of any injury, not even a bump or bruise. This Court dismissed the claim, citing *Wilburn* and concluding that there was no objective evidence that the plaintiff had suffered any injury as a result of the alleged incident.

Similarly, in *Carter v. Prator*, civil action no. 5:12cv1233, 2013 U.S. Dist. LEXIS 105190 (W.D.La., July 26, 2013), the plaintiff alleged extensive injuries including a laceration inside his left jaw, a contusion to the right side of the temple, a contusion to the left side jaw bone, and a mild concussion. However, the medical records showed that he suffered only a scratch on his left inner jaw from the fillings in his teeth. The district court, citing *Wesson*, stated that "because Plaintiff's allegations are unsubstantiated, and in fact controverted by the objective medical records, there is no genuine issue as to his injuries. The Defendants are entitled to summary judgment on the basis that the Plaintiff suffered only a *de minimis* injury."

The objective medical records in the present case do not show that Giddens suffered any discernible injuries. Nurse Durant's affidavit states that she saw him on April 18, the day after the incident, and he made no complaints of injuries and did not display any, nor did he request medical

assistance. Giddens' statement that he "does not remember" Nurse Durant approaching his cell does not refute her sworn statement that she did so. *See generally Lee v. U.S.*, civil action no. 08-2158, 2011 WL 2559842 (E.D.La., June 27, 2011) (witness testimony that he did not remember the accident and that another officer could have been present when it occurred did not refute the plaintiff's testimony and the accident report). Giddens acknowledges that the daily logs show that he did not request medical assistance from the nurse doing checks at his cell.

When Giddens was taken to the infirmary, he told Rogers that he had been choked and punched in the stomach. However, the medical records show that he had no outward signs of any injuries and there were no indications of tenderness in his stomach. Even though the examination took place five days after the alleged incident, Nurse Rogers stated that there would still be signs of an assault and that it was "highly unlikely" that Giddens would show no signs of injury or tenderness at that time.

Although Giddens contends that an inconsistency exists between the April 22 flow sheet, which shows no complaints, and his visit to the infirmary in which he complained to Nurse Rogers, this alleged inconsistency does not create a genuine issue of material fact. It is undisputed that Giddens complained to Rogers on April 22 and that the medical records show Rogers found no objective signs of any injury.

While it is true that Giddens' sworn pleadings and affidavit are competent summary judgment evidence, the Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). In *Mosley v. White,* slip op. no. 09–41091 (5th Cir., December 13, 2010), the Fifth Circuit stated as follows:

> In response to White's motion for summary judgment, as previously explained, Mosley provided the district court with his affidavit and those of his co-inmates and his grievance reports. Although we recognize that the affidavits and reports constitute valid summary judgment evidence, Fed.R.Civ.P. 56(c)(4), we have explained that without more, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden" and defeat a motion for summary judgment. *Douglass v. United Services. Auto Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996).

Similarly, while Giddens' sworn pleadings and affidavit are competent summary judgment evidence, he presents nothing more than conclusory allegations, speculation, and unsubstantiated assertions concerning his alleged injuries. This is not sufficient to defeat the Defendant's motion for summary judgment. *Foxworth v. Khoshdel*, civil action no. 4:07cv03944, 2009 U.S. Dist. LEXIS 89581 (S.D.Tex., September 28, 2009, no appeal taken) (conclusory allegations of "painful physical injuries to the gums and mouth" were not supported by objective findings in the medical records and thus could not overcome a motion for summary judgment); *Turner v. Moffett*, civil action no. 3:12cv220, 2013 U.S. Dist. LEXIS 132525 (S.D.Tex, September 17, 2013) (district court held that "based on Turner's medical records, which show no evidence of any injuries consistent with his allegations of deliberate indifference, the Court finds that Turner's allegations are implausible and thus subject to summary judgment.")

The Fifth Circuit has consistently held that civil rights plaintiffs must allege an actual injury caused by the defendants' actions. *See, e.g., Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (excessive force claim for spraying with a fire hose frivolous where prisoner suffered no injury); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (sore, bruised ear which required no medical care and healed in a few days would not support civil rights claim for excessive force); *accord, Knight v. Caldwell,* 970 F.2d 1430, 1433 (5th Cir.1992).

These holdings by the Fifth Circuit are entirely consistent with *Wilkins v. Gaddy,* 559 U.S. 34, 38, 130 S.Ct. 1175, 1179 (2010). In that case, the Supreme Court stated that in Eighth Amendment excessive force cases, the core judicial inquiry was not whether a certain quantum of injury was sustained but whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. In so holding, however, the Supreme Court specified that the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." The Supreme Court went on to explain that "an inmate who complains of

7

a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."

In the present case, the objective factors of Giddens' medical records show no evidence of any injuries consistent with the allegations of excessive force, rendering Giddens' allegations implausible. *Robles v. Glenn*, civil action no. 9:06cv256, 2007 U.S. Dist. LEXIS 41092 (E.D.Tex., June 5, 2007) (inmate who claimed he was struck in the arm with a food slot bar, but was seen that day by a nurse and four days later by a doctor, neither of whom found any signs of injury, failed to state a claim upon which relief may be granted); *Wilburn*, 1999 U.S. App LEXIS 38885 at *2. As in *Foxworth* and *Turner*, Giddens' allegations of injury lack support or substantiation in the medical records. His conclusory allegations, speculation, and unsubstantiated assertions cannot overcome the Defendant's motion for summary judgment.

### B. Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). It gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Thompson v. Mercer*, 762 F.3d 433. 436-37 (5th Cir. 2014) (citations omitted).

In determining whether a defendant is entitled to qualified immunity, the Court evaluates (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights, and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident. *Stidham v. Texas Commission on Private Security*, 418 F.3d 486, 490 (5th Cir. 2005). These two prongs may be considered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009). Even if the government official's conduct violated a clearly

established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After the defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). In order to abrogate a public official's right to qualified immunity, the plaintiff must show the official's conduct violated a constitutional or statutory right and the official's actions constituted objectively unreasonable conduct in the light of clearly established law at the time of the conduct in question. *Id*. This burden may be met by showing all reasonable officials similarly situated would have then known the alleged acts of the defendant violated the Constitution. *See Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

Giddens has not shown that Sgt. Garcia's conduct violated a constitutional or statutory right, nor that all reasonable officials, similarly situated, would have known that the conduct of the Defendant violated the law. Giddens has the burden of overcoming the defense of qualified immunity and has failed to do so. Sgt. Garcia's motion for summary judgment should be granted on this basis as well.

## IV. Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Securities and Exchange Commission v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *General Electric Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Fed. R. Civ. P. 56(c).

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995).

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *John v. State of Louisiana Bd. of Trustees for State Colleges and Universities*, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

Once the defendant has shifted the burden to the plaintiff by properly supporting his motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, or where it is so overwhelming that it mandates judgment in favor of the movant. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

In this case, the competent summary judgment evidence, viewed in the light most favorable to the non-movant, shows that there are no disputed issues of material fact and the Defendant is

entitled to judgment as a matter of law. The summary judgment evidence is too weak to support a judgment in favor of the Plaintiff and is so overwhelming that it mandates a judgment in favor of the Defendant. It is accordingly

ORDERED that the Defendant's motion for summary judgment (ECF TXED 6:13-cv-232, 51) is GRANTED and the above-styled civil action is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So ORDERED and SIGNED this 18th day of August, 2015.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE